

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| LINDA KNAPPER, and LEWIS KNAPPER, | § | |
| | § | |
| *Plaintiffs,* | § | |
| v. | § | CIVIL ACTION NO.9:08-CV-84-TH |
| | § | JURY |
| SAFETY KLEEN SYSTEMS, INC., | § | |
| formerly known as SAFETY-KLEEN CORP., et. al, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM ON DEFENDANTS'
## SEVERANCE AND VENUE MOTIONS

The Court denied the following motions in an order dated March 31, 2009:

(1)     *Defendants United States Steel Corporation, USX Corporation, and Airstech Chemical Corporation's Motion to Dismiss* [Clerk's Docket No. 25], filed July 8, 2008;

(2)     *Defendants United States Steel Corporation, USX Corporation, and Aristech Chemical Corporation's Alternative Motion to Transfer Venue* [Clerk's Docket No. 26], filed July 8, 2008; and

(3)     *Defendant Charlotte Pipe & Foundry Co.'s Motion to Transfer Venue, and Subject Thereto, Motion to Sever* [Clerk's Docket No. 44], filed July 9, 2008.

Because these motions were filed very early in the litigation, the parties requested additional time to conduct discovery and supplement their briefing. The Court granted these requests, and received supplemental briefing in January and February 2009. After considering the motions, the responsive submissions of the parties, the complaint, the record, and the applicable law, the Court reached the conclusion that the motions should be denied. The reasons for the Court's decision are set forth in this memorandum.

# I. Background

This is a toxic tort lawsuit in which the plaintiffs[1] claim that Lewis Knapper ("Knapper") developed leukemia because he was exposed to benzene in products manufactured or sold by the defendants[2] over the course of his forty-year career.

Mr. Knapper began his career as a gas station attendant in Long Island, New York, where he worked from 1966 to 1968. Then, from 1968 to 2006, Knapper worked as a plumber and pipefitter for various employers in locations around the United States. More specifically, Knapper worked for employers in New York and Florida from 1968 through 1976, in Texas from 1977 to 1985, and in Florida from 1986 to 2006.

Like Knapper's work, the defendants in this case are also spread across the country. Safety-Kleen is headquartered in the Eastern District of Texas; U.S. Steel, USX, and Aristech in the Western District of Pennsylvania; Sunoco, Inc. in the Eastern District of Pennsylvania; Charlotte Pipe and Radiator Specialty Company in the Western District of North Carolina; NIBCO in the Northern District of Indiana, and Oatey in the Northern District of Ohio. These defendants manufactured or sold various solvents, cements and other products, which Knapper allegedly used in his work as a gas station attendant, plumber, and pipefitter. Plaintiffs claim that

---

[1] The plaintiffs in this suit are Lewis E. Knapper and his wife Linda Knapper. They are referred to collectively in this memorandum as "Plaintiffs."

[2] The defendants in this lawsuit are Safety-Kleen Systems, Inc. (referred to herein as "Safety-Kleen"), Aristech Chemical Corporation ("Aristech"), Charlotte Pipe & Foundry Company ("Charlotte Pipe"), Radiator Specialty Company, Sunoco, Inc., United States Steel Corporation ("U.S. Steel"), USX Corporation ("USX"), NIBCO, Inc. ("NIBCO"), and Oatey Co. ("Oatey"). Only defendants U.S. Steel, USX, Aristech, and Charlotte Pipe have filed venue challenges. So, reference to "Defendants" in this memorandum is limited to those four companies; while reference to "the defendants" includes all of the defendants to the suit.

working with these products exposed Knapper to dangerous levels of benzene, which eventually caused him to develop leukemia and other blood disorders.

Since Knapper was diagnosed with leukemia in 2006, he has received medical treatment in Florida and the state of Washington. Knapper remains a Florida resident.

In May 2008, Plaintiffs filed this suit in the Lufkin Division of the Eastern District of Texas. Defendants now challenge this choice of venue on multiple grounds.

First, defendants U.S. Steel, USX, and Aristech assert that the Eastern District of Texas is an improper venue under 28 U.S.C. § 1391(b), and move the Court to dismiss the case pursuant to Rule 12(b)(3) of the FEDERAL RULES OF CIVIL PROCEDURE. Additionally, these Defendants argue that if the Eastern District of Texas is not an improper venue, it is at least an inconvenient one. As such, they alternatively move the Court to transfer the case to the Houston Division of the Southern District of Texas under 28 U.S.C. § 1404(a).

Similarly, defendant Charlotte Pipe moves the Court for a Section 1404(a) transfer to the Southern District of Texas or the Southern District of Florida. Charlotte Pipe argues that either of these venues would be more convenient than the Lufkin Division of the Eastern District of Texas. However, before effecting such a transfer, Charlotte Pipe moves the Court to sever Plaintiffs' claims against Charlotte Pipe, NIBCO, and Oatey (collectively the "PVC Defendants"). The basis for this request is Charlotte Pipe's assertion that the claims against the PVC Defendants are different from those made against the other defendants.

The Court addresses the motions in the following order: first, the Rule 12(b)(3) motion to dismiss for improper venue; second, the motion to sever; and third, the Section 1404(a)

motions to transfer venue. For the reasons that follow, the Court finds that all of these motions must be denied.

## II. Motion to Dismiss Based On Improper Venue

Defendants U.S. Steel, USX and Aristech present a barebones motion asserting that venue is improper in the Eastern District of Texas. For the reasons that follow, the Court concludes that the motion is without merit.

### A.  Legal Standard for Improper Venue

Rule 12(b)(3) of the FEDERAL RULES OF CIVIL PROCEDURE provides for dismissal of a case based on improper venue. Fed. R. Civ. P. 12(b)(3). Some cases hold that a defendant challenging venue has the burden to establish that venue is improper. *Youman v. Newfield Exploration Co.*, 977 F. Supp. 809, 810 (E.D. Tex. 1997) (Fisher, J.) (citing *Smith v. Fortenberry,* 903 F. Supp. 1018, 1020 (E.D. La. 1995) (quoting 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3826, 259 (3d ed. 1998)). "But 'the better view,' and the clear weight of authority, is that when an objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue." *Id.; McCaskey v. Cont'l Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).

When jurisdiction is not founded solely on diversity of citizenship, as is the case here, proper venue is determined under 28 U.S.C. § 1391(b).[3] Section 1391(b)(1) provides that venue

---

[3]The Court has diversity jurisdiction over this lawsuit because the parties are citizens of different states, and the amount in controversy exceeds $75,000.00. See 28 U.S.C. § 1332(a)(1). But, the Court also has jurisdiction because Plaintiffs have federal question jurisdiction under 28 U.S.C. §

is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b)(1)-(3). In this case, all of the defendants are corporations. And, for venue purposes, a corporation is deemed to reside in any district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c); *Int'l Software Sys. v. Amplicon, Inc.*, 77 F.3d 112, 114 n.2 (5th Cir. 1996). In a multi-district state like Texas, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-313 (5th Cir. 2008) (en banc) *cert. denied*, 2009 U.S. LEXIS 1555, 2009 WL 425117 (U.S. Feb. 23, 2009).

B. <u>Discussion of Improper Venue</u>

U.S. Steel, USX, and Aristech assert in their motion to dismiss that venue is not proper in the Eastern District of Texas because "all defendants do not reside in the same state." (U.S. Steel Def.s' Mot. to Dismiss at 1). This assertion is simply incorrect. All defendants do reside in the same State because (as explained below), all are subject to personal jurisdiction in this Court.

Each defendant in this case has filed an answer to Plaintiffs' complaint. However, no defendant challenged this Court's personal jurisdiction in its answer, in a separate motion under Rule 12(b)(2), or in any other fashion. Therefore, any personal jurisdiction defense has been waived. Fed. R. Civ. P. 12(h)(1); *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2004); *Broad. Music, Inc. v. M.T.S. Enters., Inc.*, 811 F.2d 278 (5th Cir. 1987); *Cactus Pipe &*

---

1331 because Plaintiffs have alleged a cause of action arising under 15 U.S.C. § 2072 for violations of the Federal hazardous Substances Act, 15 U.S.C. §§ 1261-77.

*Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1107-08 (5th Cir. 1985). All defendants have submitted to the jurisdiction of this Court. With their submission, the improper venue analysis ends. *Mid-West Materials, Inc. v. Tougher Indus.,* 484 F. Supp. 2d 726, 733-34 (N.D. Ohio 2007) (citing *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1047-49 (S.D. Ohio 2002) (defendant who did not challenge personal jurisdiction was deemed to reside in the district for venue purposes)); *KMR Capital, L.L.C. v. Bronco Energy Fund, Inc.*, 2006 U.S. Dist. LEXIS 86240, at *20 (W.D. Tex. July 11, 2006) (citing numerous cases for the proposition that because defendant waived personal jurisdiction defense, it resided in the district, and venue was proper). Because all of the defendants are subject to personal jurisdiction in the Eastern District of Texas, they are all deemed to reside here–and venue is therefore proper.

## C. Conclusion: Venue is Proper

For the foregoing reasons, Plaintiffs have met their burden to show that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(1). The motion to dismiss filed by U.S. Steel, USX, and Aristech must be denied.

## III. MOTION TO SEVER CLAIMS AGAINST PVC DEFENDANTS

The Court now turns its attention to Charlotte Pipe's motion to sever the claims brought against the PVC Defendants, pursuant to Rule 21 of the FEDERAL RULES OF CIVIL PROCEDURE.

## A. Legal Standard: Severance

Rule 21 allows a district court to "sever any claim against a party." Fed. R. Civ. P. 21.

"[S]everance under Rule 21 creates two separate actions or suits where previously there was but one." *Allied Elevator, Inc. v. E. Tex. State Bank*, 965 F.2d 34, 36 (5th Cir. 1992) (quoting *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983)). Severance is appropriate if trying claims together would confuse the jury due to legal and factual differences. *Delce v. Nat'l Passenger R.R. Corp.*, 180 F.R.D. 316, 319 (E.D. Tex. 1998).

## B. Discussion of Severance

As stated above, Charlotte Pipe argues that differences between the claims made against the PVC Defendants and those made against other defendants make severance appropriate. Specifically, Charlotte Pipe alleges that the claims against the PVC Defendants "allege injury arising from occupational activities Mr. Knapper undertook as a plumber using PVC pipe and cement and allege sources of exposure to benzene that are different from those alleged with respect to the other Defendants." (Def. Charlotte Pipe's Mot. to Sever at 3). In other words, the claims allege exposure to different products in different occupations.

After identifying these differences, Charlotte Pipe asserts in conclusory fasion that "[t]he allegations against the PVC Defendants present separate and distinct legal and factual issues...such that severing claims against the PVC Defendants would avoid jury confusion, avoid prejudice to the PVC Defendants, and promote the interests of justice." (Def. Charlotte Pipe's Mot. to Sever at 3). But, Charlotte Pipe does not develop this argument—and the Court disagrees with it anyway.

The allegations against the PVC Defendants do not appear to present legal issues that are in any respect different from those raised by the allegations against the other defendants. In

both instances, the central issue is the same: whether exposure to a defendant's products is the legal cause of Knapper's illness. As for the factual differences noted by Charlotte Pipe, they are not likely to confuse a jury. Further, the Court finds that the interests of justice are best served by trying all of Plaintiffs' claims together.

## C. Conclusion: Severance is not proper

For these reasons, the Court finds that severance is not proper. Charlotte Pipe's motion should be denied.

## IV. MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

The Court now considers whether this case should be transferred from the Lufkin Division of the Eastern District of Texas to the Houston Division of the Southern District of Texas or the Southern District of Florida.

## A. Legal Standard: 1404(a) Transfer

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any district in which it might have been brought "[f]or the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) "is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*,

811 F.2d 916, 919 (5th Cir. 1987)).

When presented with a motion to transfer venue, the first question for a district court is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). If the answer is yes, the court's consideration turns to the convenience of the parties and witnesses. *Id.* at 433.

The Fifth Circuit Court of Appeals recently articulated the standard that district courts should apply in this convenience analysis in *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) *cert. denied*, 2009 U.S. LEXIS 1555, 2009 WL 425117 (U.S. Feb. 23, 2009) (referred to herein as "*Volkswagen*"). In *Volkswagen*, the Court established that "§ 1404(a) venue transfers may be granted upon a lesser showing of inconvenience than *forum non conveniens* dismissals." *Id.* at 314 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S. Ct. 544, 99 L. Ed. 789 (1955)). So, while the burden is on the moving party to justify a venue transfer, that burden "is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal." *Id.* The moving party has the burden to show "good cause" for transfer, which under *Volkswagen* means a showing "that the transferee venue is clearly more convenient." *Id.*

However, the Fifth Circuit also established in *Volkswagen* that the factors to be considered in ruling on a 1404(a) transfer motion are the same as those used in the *forum non conveniens* context. *Volkswagen*, 545 F.3d at 315, n.9 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)). They include both private and public interest factors. *Id.* The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious

and inexpensive." *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* Still, these factors are not necessarily exhaustive or exclusive. *Id.* Further, none of the factors "can be said to be of dispositive weight." *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

Significantly, the Fifth Circuit also shed light on the degree of deference given to a plaintiff's choice of venue in *Volkswagen*. *Id.*, 545 F.3d at 315. The Court stated that the plaintiff's choice of venue is not a distinct factor in the 1404(a) analysis. *Id.* at 315 n.9. Instead, the plaintiff's choice simply establishes the burden the moving party must meet to demonstrate that venue transfer is appropriate. *Id.* at 315. And, the moving party's "good cause" burden "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.* Therefore, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

## B. Discussion of 1404(a) Transfer

Defendants move the Court to transfer venue to the Houston Division of the Southern District of Texas or the Southern District of Florida. The parties do not dispute that this action could have been brought in either of these districts. Therefore, the Court may move on to consider the private and public interests factors. Given the number of factors to be considered, and the fact-intensive nature of the analysis, the Court will assess the convenience of these two judicial districts (relative to the Lufkin Division) in turn.

1.  Houston v. Lufkin

a.  Private Interest Factors

(1)  Relative Ease of Access to the Sources of Proof

The Fifth Circuit acknowledged in *Volkswagen* that modern developments have made sources of proof more accessible, despite their physical location. *Volkswagen*, 545 F.3d at 316; *accord Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). Still, such developments do not render this factor superfluous; and it may not be read out of the 1404(a) analysis. *Volkswagen*, 545 F.3d at 316. In order for this factor to weigh in favor of transfer, the movant must show that transfer will result in more convenient access to sources of proof. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). The movant must identify sources of proof with enough specificity for the Court to determine whether transfer will increase convenience. *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, 2009 U.S. Dist. LEXIS 13210, at *7, 2009 WL 440525, at *4 (E.D. Tex. Feb. 20, 2009).

Defendants assert that "most, if not all," of Knapper's employers during the time he worked in Texas were located in the Southern District of Texas. (Charlotte Pipe's Reply to its Supplemental Brief at 3). Therefore, Defendants argue, the majority of the documentary proof related to the work that Knapper did in Texas is probably located in the Houston area. Defendants do not identify any particular evidence in the Southern District of Texas. So, the Court cannot assess just how it might affect convenience. But, assuming that work-related records do exist there, the Court must also recognize that similar records should exist in New York and Florida; the other States where Knapper worked. Lufkin is closer to New York and

Florida than is Houston. So, any documentary proof related to Knapper's work in New York and Florida would have to travel slightly further to reach Houston if transfer occurred.

Furthermore, business records and other relevant sources of proof are located at the defendants' corporate headquarters, which are spread around the United States.[4] And, every defendant's corporate office is geographically closer to Lufkin than it is to Houston.[5] So, sources of proof located at the defendants' home offices would actually have to travel further to reach Houston. But, more importantly, the fact that these sources of proof are not in a centralized geographic location makes access to them from Lufkin or Houston equally inconvenient.

Finally, certain sources of proof may be located in the Eastern District of Texas. Safety-Kleen has its corporate headquarters in Plano, Texas; while NIBCO maintains a manufacturing

---

[4]Safety Kleen's home office is in Plano, Texas; U.S. Steel, USX, and Aristech's in Pittsburgh, Pennsylvania; Sunoco's in Philadelphia, Pennsylvania; Charlotte Pipe's in Charlotte, North Carolina; NIBCO's in Elkhart, Indiana; and Oatey's in Cleveland, Ohio.

[5]The Court takes judicial notice (with the help of Google Maps) of the distances between the defendants' headquarters and Lufkin and Houston, respectively. *See* http://maps.google.com (select "Get Directions" hyperlink; enter locations). The approximate distances (in miles) from each home office to each venue are as follows:

| Home Office | Distance to Lufkin | Distance to Houston |
|---|---|---|
| Plano, TX | 186 | 264 |
| Pittsburgh, PA | 1,235 | 1,415 |
| Philadelphia, PA | 1,451 | 1,546 |
| Charlotte, NC | 960 | 1,037 |
| Elkhart, IN | 1,056 | 1,257 |
| Cleveland, OH | 1,193 | 1,374 |

facility in Nacogdoches, Texas. Relevant records likely exist at these locations.

The Court finds that the sources of proof are many, scattered across the nation. Transfer to Houston would make access to the proof related to Knapper's work in Texas slightly easier, since such proof can be found there. But, it would also make access to the proof located in New York, in Florida, and at the defendants' home offices slightly more difficult, since that proof would travel further to reach Houston. In short, the sources of proof are equally accessible from Lufkin or Houston.

As such, Defendants have failed to show that Houston would be any more convenient than Lufkin for accessing the sources of proof. This factor is neutral.

(2) Availability of Compulsory Process

Defendants do no address this factor. So, it provides no help in carrying their burden to show good cause for transfer to Houston.

(3) Cost of Attendance for Willing Witnesses

When considering the third private interest factor, the Fifth Circuit adheres to the "100 mile" rule. *See Volkswagen*, 545 F.3d at 371. According to this rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 204-205 (5th Cir. 2004)). The principle underlying this rule is that it is more convenient for witnesses to

testify at home. *Id.* "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. *Id.*

The Lufkin Division is 121 miles from the Houston Division. http://maps.google.com (select "Get Directions" hyperlink; enter locations). So, the 100 mile rule applies.

This witness convenience factor can weigh in favor of transfer to another district where all of the witnesses are located in or around that district. *See, e.g., In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). On the other hand, this factor can be neutral if the transferee district is not convenient for all of the witnesses. *See, e.g., Network-1 Security Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 800 (E.D. Tex. 2006) (denying defendants' motion for transfer when the witnesses were in different geographic locations); *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, 2009 U.S. Dist. LEXIS 13210, at *10-12, 2009 WL 440525, at *4 (E.D. Tex. Feb. 20, 2009) (where none of the parties were localized in one general geographic area, this factor was neutral); *Novartis Vaccines & Diagnostics, Inc. v. Hoffman-La Roche Inc.*, 2009 U.S. Dist. LEXIS 14656, at * 14-16 (E.D. Tex. Feb. 3, 2009) (finding this factor neutral where witnesses were "decentralized").

Defendants assert that potential witnesses with knowledge relating to Knapper's alleged use of the defendants' products are located in the Houston Division of the Southern District of Texas–since that is where Knapper primarily worked while in Texas. (Charlotte Pipe's Supplemental Brief at 4-5). But, Defendants do not identify specific witnesses; nor do they argue that any of these individuals are key witnesses. They do not address whether these are

"willing" witnesses either. Presumably individuals with knowledge of Knapper's alleged use of the defendants' products would be relevant witnesses. However, the identity, willingness to testify, knowledge, and significance and these witnesses is unknown. They are little more than apparitions. As such, they do not add much weight in favor of transfer.

With respect to other potential witnesses, like the aforementioned sources of proof, they are scattered around the United States. The Plaintiffs live in Florida. The defendants are headquartered in Texas, Pennsylvania, North Carolina, Indiana and Ohio. Mr. Knapper's doctors and healthcare providers familiar with his illnesses are in Florida and Washington. Individuals who worked with Mr. Knapper when he allegedly used the defendants' products may be in Texas, Florida, and New York. Clearly, the parties and the nonparty witnesses are not located in one general geographic area.

Nevertheless, Defendants maintain that it is precisely the decentralization of witnesses that makes Houston more convenient–because Houston has an airport and Lufkin does not. Defendants argue that any out-of-state witness or party will have to fly to Houston, whether venue is there or in Lufkin. So, the argument goes, transferring venue will save these individuals the trouble of driving from Houston to Lufkin.[6]

This Court is particularly qualified to assess the inconvenience imposed by a drive to Lufkin, given that the undersigned judge (who sits in Beaumont, Texas) will travel approximately 107 miles to Lufkin for trial. http://maps.google.com (select "Get Directions" hyperlink; enter

---

[6]Defendants do not specify whether these out-of-state parties and witnesses plan to fly into George Bush Intercontinental Airport (101 miles to Lufkin) or Houston Hobby Airport (129 miles to Lufkin). Both are fine facilities. However, for those individuals facing a drive to Lufkin, the Court recommends Intercontinental, which is on the northeast side of Houston, 28 miles closer.

locations). This judge finds that distance quite manageable–and believes that the additional travel to Lufkin for parties and witnesses who fly into Houston makes Houston only slightly more convenient.

As stated above, the parties and potential nonparty witnesses are not located in a general geographic area. Further, the Court is without information to say which witnesses in this potential group of nonparty witnesses are key witnesses, nor which ones are willing to testify. So, the Court cannot assign particular weight to any specific individual's convenience. Instead, the Court must conclude that neither the Houston Division nor the Lufkin Division is particularly convenient for all of the witnesses in this case. *See Network-1*, 433 F. Supp. 2d at 800; *J2 Global Commc'n*, 2009 U.S. Dist. LEXIS 13210, at *10-12; *Novartis*, 2009 U.S. Dist. LEXIS 14656, at * 14-16. However, the presence of two large airports makes Houston more convenient for out-of-state parties and nonparty witnesses.

For the foregoing reasons, the Court finds that this third factor weighs slightly in favor of transfer.

(4) All other Practical Problems

Defendants do not discuss any practical problems that would make trial of this case easier more expeditious, or less expensive if it was transferred to Houston. As such, this fourth private interest factor is neutral.

b.  Public Interest Factors

Having considered the relevant private interest factors, the Court now turns its attention to the public interest factors.

(1)  Administrative Difficulties from Court Congestion

Defendants have not addressed this factor.  Thus, it is neutral.

(2)  Local Interest

Defendants argue that the Houston Division has an interest in this case because some of the operative facts occurred there.  Specifically, because "Mr. Knapper allegedly used the defendants' products in...the Southern District of Texas – Houston Division."  (Charlotte Pipe's Supplemental Brief at 10).

However, the Lufkin Division has an interest as well, since two of the defendant companies have offices in the Eastern District of Texas.  Safety-Kleen's principal place of business is in Plano; while NIBCO has a manufacturing facility in Nacogdoches.  Nacogdoches is approximately 21 miles from Lufkin. http://maps.google.com (select "Get Directions" hyperlink; enter locations).  And, the Lufkin Division draws Nacogdoches residents for its jury panels.

The Federal Circuit recognized in *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) that the presence of a defendant's office within a district gives rise to a localized interest.  *Id.* at

17

1321. As such, the facts here are distinguishable from those in *Volkswagen* and *TS Tech* because there is a relevant connection between the action giving rise to the case and the Eastern District of Texas.

The Court finds that Defendants fail to show that the Houston Division has any greater interest in resolving this dispute than does the Lufkin Division. As such, this factor is neutral.

(3) Familiarity of the Forum with the Governing Law

Defendants have not addressed this factor. As such, it does not advance their burden to show that transfer is proper.

(4) Avoidance of Unnecessary Problems of Conflict of Laws

Defendants have not addressed this factor. Therefore, it is neutral and does not weigh in favor of transfer.

c. Conclusion: Transfer to Houston is not Proper

Having considered the relevant factors, the Court finds that only one weighs in favor of transfer–and only slightly, at that. Defendants have failed to show that the Houston Division is clearly more convenient than the Lufkin Division. Accordingly, their request to transfer the case to the Houston Division is denied.

2. Florida v. Lufkin

In the alternative to a Houston Division transfer, Defendants argue that the case should be transferred from Lufkin to the Southern District of Florida.[7]

a. Private Interest Factors

(1) Relative Ease of Access to the Sources of Proof

As to Florida and the first factor, Defendants make an argument analogous to that used with respect to Houston. They argue that Florida offers increased access to sources of proof because Knapper worked in Florida for a large part of his career, and "most, if not all" of his Florida employers are located in the Southern District. (Charlotte Pipe's Reply to its Supplemental Brief at 3). Presumably, records related to Knapper's work are located there. In addition, Mr. Knapper has received medical treatment for his leukemia and other illnesses in Florida, and the related medical records are located there. With respect to these work and medical records, transfer to Florida would make access to relevant sources of proof more convenient.

---

[7]Defendants do not specify any particular division within Florida's Southern District. This makes calculating distances relevant to the convenience analysis somewhat imprecise, since the five divisions within the Southern District of Florida stretch some 283 miles from Fort Pierce in the north to Key West in the South. http://maps.google.com (select "Get Directions" hyperlink; enter locations). In this memorandum, the Court will use the Miami Division for distance considerations because of its central location within the Southern District and Defendants' concern with airports. Still, the Court emphasizes that Miami is selected only for demonstrative purposes. The Court's ultimate conclusion as to venue transfer would be the same, regardless of which division within Florida's Southern District was considered.

However, as stated above, many other sources of proof are scattered around the nation. Additional work records are in Texas and New York. The defendants' corporate records are in Texas, Pennsylvania, North Carolina, Indiana, and Ohio. And, certain medical records are in Washington. Some of these records are closer to Florida; some closer to Lufkin.[8] With the evidence so spread out, it is not particularly accessible from Lufkin or Florida.

For these reasons, the Court finds that Florida offers access to the collective sources of proof that is no more convenient than the access from Lufkin. This factor is neutral.

(2) Availability of Compulsory Process

Defendants do no address this factor. So, it does not help show good cause for transfer to the Southern District of Florida.

---

[8]This chart demonstrates the distances in miles from the sources of proof to Lufkin, Texas and Miami, Florida, respectively. http://maps.google.com (select "Get Directions" hyperlink; enter locations).

| Location of Evidence | Distance to Lufkin | Distance to Miami |
|---|---|---|
| Long Island, NY | 1,537 | 1,286 |
| Houston, TX | 119 | 1,186 |
| Plano, TX | 186 | 1,371 |
| Pittsburgh, PA | 1,235 | 1,175 |
| Philadelphia, PA | 1,451 | 1,195 |
| Charlotte, NC | 960 | 729 |
| Elkhart, IN | 1,056 | 1,381 |
| Cleveland, OH | 1,193 | 1,242 |
| Seattle, WA | 2,373 | 3,355 |

(3)  Cost of Attendance for Willing Witnesses

As before, the Court applies the 100 mile rule to the consideration of this third private interest factor, since the Lufkin Division is more than 100 miles from Florida's Southern District.

Defendants claim that the Southern District of Florida is more convenient for the parties and nonparty witnesses for several reasons.  First, Plaintiffs themselves are residents of Florida's Southern District.  As to nonparty witnesses, Defendants assert that individuals who worked with Mr. Knapper and have knowledge of his alleged use of the defendants' products are located in Florida.  Additionally, doctors and other healthcare providers who have treated Knapper live in Florida.  As before, Defendants do not identify any particular witness, and do not state whether these individuals are key witnesses.

Furthermore, as stated in the Court's discussion of this factor with respect to Houston, the parties and witnesses are not localized in a general geographic area.  The corporate defendants are headquartered in Texas, Pennsylvania, North Carolina, Indiana, and Ohio.  Nonparty witnesses from Knapper's working days who have knowledge of his alleged benzene exposure are in Florida, Texas, and New York.  Mr. Knapper's doctors are in Florida and Washington.

For these reasons, the Court concludes that because the parties and nonparty witnesses are not concentrated in any general area, Lufkin is just as convenient for them as the Southern District of Florida.  *See Network-1*, 433 F. Supp. 2d at 800; *J2 Global Commc'n*, 2009 U.S. Dist. LEXIS 13210, at *10-12; *Novartis*, 2009 U.S. Dist. LEXIS 14656, at * 14-16.  Accordingly, this

third private interest factor is neutral.

(4) All other Practical Problems

Defendants do not discuss any practical problems that would make trial of this case easier more expeditious, or less expensive if it was transferred to the Southern District of Florida. As such, this fourth factor is also neutral.

b. Public Interest Factors

Having applied the relevant private interest factors to the proposed Florida transfer, the Court now turns its attention to the public interest factors. However, as in their briefing on Houston transfer, Defendants have not addressed the first, third or fourth public interest factors with regard to the Southern District of Florida. As such, those factors are neutral. The Court need only consider the second public factor: the local interest in resolving local disputes.

Defendants argue that Florida has a greater interest in having this case tried in the Southern District because that is where Plaintiffs now reside, and because that is where many of the events giving rise to Knapper's claim (the alleged exposure to the defendants' products) occurred. But, as previously stated the Lufkin Division has an interest in trying this case as well, since Safety-Kleen and NIBCO have offices in the Eastern District of Texas. Their presence gives rise to a legitimate public interest in Lufkin. *Supra* at 18; *see TS Tech*, 551 F.3d at 1321.

Accordingly, the Court finds that Defendants have not shown that the Southern District of Florida has any greater interest in resolving this dispute than does the Lufkin Division. As

such, this factor is neutral.

c. Conclusion: Transfer to Florida is not Proper

Having considered the relevant private and public interest factors, the Court concludes that Defendants fail to carry their good cause burden. The Southern District of Florida is not clearly more convenient than the Lufkin Division. Accordingly, Defendants' request to transfer the case to Florida is denied.

## V. CONCLUSION

For the reasons stated above the Court denies: (1) the Rule 12(b)(3) motion to dismiss for improper venue filed by U.S. Steel, USX, and Aristech; (2) Charlotte Pipe's motion to sever; and (3) Defendants' Section 1404(a) motions to transfer venue.

**SIGNED** this the **3** day of **April, 2009.**

Thad Heartfield
United States District Judge