IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| LEWIS E. KNAPPER and<br>LINDA KNAPPER | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO: 9:08-cv-0084 |
| SAFETY KLEEN SYSTEMS, INC.,<br>ET AL. | §<br>§<br>§ | |

**DEFENDANTS UNITED STATES STEEL CORPORATION AND RADIATOR SPECIALTY COMPANY'S JOINT RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF JOHN SPENCER**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendants, United States Steel Corporation, USX Corp Sunoco, Inc., and Radiator Specialty Company ("Defendants") filed this Supplemental Response to Plaintiffs' Supplemental Motion to Exclude the Opinions and Testimony of John Spencer.

## I. BRIEF SUMMARY OF FACTS AND ARGUMENTS

Plaintiffs filed their motion to exclude the opinions and testimony of John Spencer on July 23, 2009 (the "Original Spencer Motion"). Defendants filed their response on August 7, 2009, (the "Defendants' Response"). Subsequently, plaintiffs' filed a supplemental motion to exclude the opinions and testimony of John Spencer (the "Supplemental Motion").

The Supplemental Motion includes many of the same arguments and contentions as the Original Spencer Motion. Defendants have responded to such contentions in their Original Response and will not repeat its responses in this Supplemental Response. However, plaintiffs make two new arguments in their Supplemental Motion which will be addressed herein.

First, plaintiffs contend that only a chemical engineer can render opinions regarding the evaporation rate of a chemical. For this assertion, plaintiffs rely on a single case, *Cooper Tire and Rubber Company vs. Mendez*, 204 S.W.3rd 797( Texas 2006). As set forth below, plaintiffs' reliance on the *Cooper Tire* case is nonsensical. Moreover, the plain text of Federal Rule of Evidence makes clear that there is no "litmus test" of any particular college degree for an expert's qualifications.

Secondly, Plaintiffs' original motion to exclude John Spencer focused on a 2009 evaporation rate study which he conducted. However, in the Supplemental Motion plaintiffs apparently now contend that a 2002 simulation study conducted by John Spencer should also be excluded because

the product tested in the 2002 study was not sufficiently matched to historical benzene containing formulations of Liquid Wrench. This argument is very similar to the argument plaintiffs make about the reformulated Liquid Wrench used in the 2009 evaporation rate study. The argument plaintiffs make about the 2002 study fails for many of the same reasons plaintiffs' similar complaints about the 2009 evaporate rate study fail.

## II. ARGUMENT

A. *Daubert* Does Not Require a Witness who Testified Regarding the Evaporation Rate of a Chemical to Have a Chemical Engineering Degree.

The test for whether an expert possesses the appropriate qualifications is simply whether the expert, by knowledge, skill, experience, training or education, has sufficient expertise to be helpful to the jury. See FRE 702. Obviously, a degree in a particular sub - specialty is not a bright line requirement.

1. The *Cooper Tire* Case, which Is the only Case Plaintiffs Cite in Support of this Argument, Does Not Support their Position.

Plaintiffs contend that only an expert with a chemical engineering degree can render opinions regarding the evaporation rate for chemicals. See Plaintiffs' Supplemental Motion, Document 199 at 2-3. For this assertion, they rely upon *Cooper Tire and Rubber Company vs. Mendez*, 204 S.W. 3d 797 (Texas 2006).

As a threshold matter, Defendants point out that plaintiffs have flagrantly misrepresented to the Court the holding in that case. Plaintiffs' Supplemental Motion states:

> "In *Cooper Tire and Rubber vs. Mendez*, the Texas Supreme Court held that a chemist employed by the George Tech Research Institute with an undergraduate degree in chemistry and a masters degree in polymer science was not qualified to testify on certain issues in a tire belt separation case because the expert lacked more specialized

3

education, training or experience in tire chemistry."

See Plaintiffs' Supplemental Motion, Document 199 at 2. It is obvious to anyone who actually reads the entire *Cooper Tire* opinion that the foregoing statement is false. *Cooper Tire* involved wrongful death and survival claims resulting from an alleged tread separation in a Cooper Tire steal belted radial tire. *Cooper Tire*, 204 S.W. 3d at 799. It was undisputed that a post accident investigation of the tire revealed a nail hole in the tread which had penetrated completed through the tire. *Id.* at 801. Plaintiffs retained an expert, Richard Grogan, who testified that it was not the hole in the tire which caused the tread separation, but instead that the tread separation was caused by wax contamination. *Id.* at 801. The Court did discuss Mr. Grogan's qualifications and noted that he was not a chemical engineer or tire designer. *Id.* However, the Court never made a determination as to whether or not his academic qualifications rendered his testimony inadmissible. Specifically, the Court never said–as plaintiffs contend– that he was not qualified to testify because he lacked more specialized education, training and experience in "tire chemistry." See Plaintiffs' Supplemental Motion at 3. In fact, the *Cooper Tire* Court assumed that Grogan did possess the general qualifications to testify on the subject of tire failures, but then turned its analysis to whether or not his actual theory was reliable or not. *Id.* at 801. The Court stated:

> "Assuming that Grogan generally was qualified to testify on the subject of tire failures, he presented a theory of wax contamination that was unreliable and should not have been admitted. *Cooper Tire*, 204 S.W. 3d at 802."

After analyzing Grogan's opinions, the *Cooper Tire* Court concluded that his theory "amounted to no more than subjective belief or unsupported speculation. . .[and that] his explanation for the tire failure was a naked hypothesis untested and unconfirmed by the methods of science and

was legally insufficient to establish a manufacturing defect that caused the failure." *Cooper Tire*, 204 S.W. 3d at 805.[1]

    B.    <u>Plaintiffs' Contention that Spencer's 2002 Simulation Study is Unreliable Simply Underscores the Unreliability of Petty's "Method".</u>

Mr. Spencer conducted a 2002 simulation study to determine the inhalation exposures which could be obtained if a person was working with benzene containing Liquid Wrench. Because the benzene containing formula was no longer available, Mr. Spencer bought a then-current formulation of Liquid Wrench off of the shelf and "spiked it with benzene." See Plaintiffs' Supplemental Motion, Document 199, at 7. Plaintiffs contend that the results of the 2002 study are unreliable because the product Spencer tested was not sufficiently similar to historical formulas of Liquid Wrench. *Id.* This argument is flawed for several reasons.

First, it should be obvious to plaintiffs that if the reformulated product Mr. Spencer used in his 2002 inhalation study was not sufficiently similar to historical benzene containing formulations of Liquid Wrench, then clearly the opinions of their own expert, Petty, are likewise unreliable since Mr. Petty never attempted to base any of his opinions on reformulations of historical benzene containing Liquid Wrench, but instead simply (and arbitrarily) assumed that the evaporation half life of benzene out of Liquid Wrench would be halfway in between the half life of gasoline as a whole and the half life of benzene in the Exxon Valdez crude oil study.

Second, plaintiffs make no effort to even contest the reliability of the results measured in the 2002 simulation study. Specifically, plaintiffs' own expert, Stephen Petty, has not criticized any of

---

[1] The Court went on to point out that "a flaw in the experts reasoning from the data may render reliance on the study unreasonable and render the inferences drawn therefrom dubious. Under that circumstance, the expert's scientific testimony is unreliable and legally no evidence. *Cooper Tire*, 204 S.W. 2d at 801. Thus, admission of expert testimony that does not meet this reliability requirement is an abuse of discretion."

5

the results from that study. Further, plaintiffs have made no effort to show how Spencer's reliance on the data from the 2002 study renders his ultimate opinions on the inhalation exposures unreliable.

Finally, plaintiffs fail to advise the Court that the Williams-Paustenbach peer reviewed published paper compared the measured results from a reformulated batch of Liquid Wrench (made from raffinate) to the results obtained from using a "spiked" current version of Liquid Wrench and found that there was no material difference in the emission rate of benzene from a reformulated batch of Liquid Wrench and a "spiked" version. See Exhibit 1, Williams & Paustenbach, et al., *(2007) Airborne Concentrations of Benzene Associated with Historical Use of Some Formulations of Liquid Wrench* at 556 ("the airborne concentrations of benzene did not differ significantly based on the base formulation of the product – i.e. whether the product was recreated using raffinate spiked with benzene or was based on a current (circa 2005) blend of Liquid Wrench spiked with . . . benzene . . ."). Thus, there is no scientific evidence that a different result would have been obtained in the 2002 study even if Spencer had used a raffinate based reformulated product.

    C.    <u>Plaintiffs' Supplemental Motion Contains Other Obfuscatory Statements, Some of Which are Addressed Below.</u>

        1.    <u>Mr. Spencer did not "all but admit that his data was suspect."</u> Plaintiffs claim that Mr. Spencer "all but admitted that his data was suspect." See Plaintiffs' Supplemental Motion, Document 199, at 7. A review of the deposition transcript establishes that Mr. Spencer never made such an admission. See Exhibit 2, Deposition of John Spencer, at 202:13-204:11. Instead, Mr. Spencer said he would be happy to conduct another test at the direction of he, Mr. Petty, and a neutral court appointed third party expert to address any concerns Mr. Petty may have regarding whether an appropriate protocol was followed regarding the test. *Id.* Of course, neither plaintiffs

nor Mr. Petty have offered to take Mr. Spencer up on this challenge.

      2.    <u>Plaintiffs' Constant and Tiresome Complaints that Certain Peer Reviewed Published Data Were Written by Experts who were "Bought and Paid for" by Defendants in Benzene Litigation is Undermined by their own Counsel's Admissions Regarding the Expertise and Integrity of these Witnesses in other Litigation.</u>

In the Supplemental Motion and in other motions and responses before this court, plaintiffs impugn the integrity of the authors of two peer reviewed published papers. Each paper is briefly discussed below.

- Williams, Paustenbach, et al., *Simulation Study of Benzene Exposure from Use of Liquid Wrench.* (Exhibit 1)

In 2006, Williams and Paustenbach published the results of their simulation study of potential benzene exposures from working with Liquid Wrench in a peer reviewed journal. <u>See</u> Exhibit 1. Dr. Nicas relied in part on this paper when he wrote his own peer reviewed published paper in 2008 wherein he opined that the half life of benzene out of Liquid Wrench would be 5 minutes. <u>See</u> Defendants' Response to Plaintiffs' Motion to Exclude John Spencer, Document 196 at 13. Since this half life is further evidence of the reliability of Spencer's estimate of 3 minutes - - and of the <u>un</u>-reliability of Petty's estimate of 1.1 hours, Plaintiffs go to great lengths to distance themselves from Dr. Nicas (again their counsel's own expert) and to also suggest that the paper by Williams and Paustenbach is unreliable because the study was funded (or alternatively "bought and paid for") by United States Steel. <u>See</u> Plaintiffs' Supplemental Motion, Document 199, at 7. The clear suggestion made by plaintiffs is that the work of Dr. Williams and Dr. Paustenbach is not reliable and should not be relied upon by their counsel's own expert, Mark Nicas, or any other experts in this case. *Id.*

- Hui and Maibach, et. al. *In Vitro Per cutaneous Absorption fo Benzene in Human Skin* (Exhibit 3)

Plaintiffs further complain that US Steel's experts should not rely upon a paper published in 2009 by Hui and Maibach which found that over 98% of the benzene in Safety Kleen solvent remained after 30 minutes. See Plaintiffs' Supplemental Motion, Document 199 at p. 7. See also Exhibit 3, at 65. This peer reviewed finding differs significantly from the 3.2 hour half life estimated by plaintiffs' expert, Stephen Petty, in this case. See Exhibit 4, Report of Stephen Petty at 33 and Exhibit 5, Report of Peter Drivas at 13. As with the Williams-Paustenbach paper, plaintiffs complain that since the Hui and Maibach study was funded by Safety Kleen Systems, Inc., it is not reliable. See Plaintiffs' Supplemental Motion, Document 199 at 7.

Plaintiffs' counsel has represented to this Court that the authors of these papers are not to be relied upon. See Plaintiffs' Supplemental Motion, Document 199 at 7-8. However, when it suits their purpose, plaintiffs' counsel claims that these "bought and paid for experts" are actually well-respected members of the scientific community. In a recent filing before a New Mexico appellate court, plaintiffs' counsel states that Dr. Maibach and Dr. Paustenbach are "noted and well-respected members of the scientific community" whose work should be relied upon by experts in toxic tort litigation. See Exhibit 6, Plaintiffs' Brief in Chief *Andrews vs. United States Steel*[2], in the Court of

---

[2] As set forth in the Brief, it was filed in connection with the appeal of rulings from the trial court regarding the opinions of Dr. Nicas, who was retained by the plaintiffs in that case to calculate an assessment of Mr. Andrews exposure to benzene from working with Liquid Wrench and gasoline. Defendants in that case (including United States Steel) contended (and still contend) that Nicas' opinions should be excluded for several reasons, including that his dermal modeling is unreliable. Defendants did not challenge Nicas' estimate of the evaporation rate of benzene out of Liquid Wrench in that case. The Trial Court held, *inter alia,* that the dermal absorption modeling performed by Dr. Nicas was unreliable and inadmissible. Defendants do not contend in this case that all of Dr. Nicas' opinions are reliable or correct. However, that a plaintiff's expert retained by plaintiffs counsel in this case has generated a peer reviewed opinion which supports US Steel's expert's opinions regarding the key issue of evaporation rate, undercuts significantly the plaintiffs' expert's opinions on that issue.

Appeals in the State of New Mexico, at 42-43. As reflected on the signature block of Exhibit 9 at 49, that brief was submitted by Lance Lubel and J. Robert Black, plaintiffs' counsel in this case.

The inconsistency between plaintiffs' counsel statements to this Court and its statements to the Appeals Court in New Mexico are yet another example of attempts to obfuscate the issues before this Court. Defendants respectfully request that after the extensive briefing submitted by defendants and plaintiffs with respect to all of these experts, the Court ask the experts themselves to sit in the witness stand under oath and testify regarding the issues presented herein.

### III. CONCLUSION

For the foregoing reasons, defendants request a live hearing at which oral testimony may be presented regarding Plaintiffs' Motion to Exclude the Testimony and Opinions of John Spencer. Further, defendants ask this Court to deny said Motion.

Respectfully submitted,

By:     /s/ Tim Gray
    **TIM GRAY**
    State Bar No. 24030230
    **PHILLIP S. SYKES**
    *Pro Hac Vice*
    **LEA ANN SMITH**
    *Pro Hac Vice*
    **PATRICE PUJOL**
    State Bar No. 00794488

**OF COUNSEL:**
FORMAN PERRY WATKINS KRUTZ & TARDY LLP
1717 St. James Place, Suite 600
Houston, Texas 77056
Telephone: (713) 402-1717
Facsimile: (713) 621-6746
tgray@fpwk.com
PujolP@fpwk.com

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
200 South Lamar Street, Suite 100
Jackson, Mississippi 39201
Telephone: (601) 960-8600
Facsimile: (601) 960-8613
PSykes@fpwk.com

*– And –*

By: *James M. Riley, Jr. (by permission)*
JAMES M. RILEY, JR.
State Bar No. 16931800
**STACY SEIDLITZ YATES**
State Bar No. 24002925
3 Greenway Plaza, Suite 2000
Houston, Texas 77046-0307
(713) 651-0111
(713) 651-0220 (Facsimile)

**ATTORNEY IN CHARGE FOR DEFENDANT
RADIATOR SPECIALTY COMPANY**

ORGAIN, BELL & TUCKER, L.L.P.
**GILBERT I. LOW**
State Bar No. 12619000
**S. DONEAN SURRATT**
State Bar No. 01720400
470 Orleans Street
P.O. Box 1751
Beaumont, Texas 77704-1751
Telephone: 409-838-6412
Facsimile: 409-838-6959
sds@obt.com

**ATTORNEYS FOR DEFENDANTS
UNITED STATES STEEL CORPORATION
USX CORPORATION, ARISTECH CHEMICAL
CORPORATION, SUNOCO, INC. (R&M) AND
RADIATOR SPECIALTY COMPANY**

11

## **CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing instrument has been served on plaintiffs' lead counsel listed below and on all other counsel of record via the CM/ECF system or other means in accordance with the FEDERAL RULES OF CIVIL PROCEDURE on this the 17th day of August 2009.

Messrs. Lance Lubel, John M. Black, and J. Robert Black (*Via CM/ECF*)
HEARD ROBINS CLOUD & LUBEL, LLP
3800 Buffalo Speedway, 5th Floor
Houston, Texas 77098
*Lead Counsel for Plaintiffs*

                          /s/ Tim Gray
                       **TIM GRAY / PATRICE PUJOL**